UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA TAYLOR,                                    Case No. 12-15099

                    Plaintiff,                   Bernard A. Friedman
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 13)**

**I.    PROCEDURAL HISTORY**

   **A.    Proceedings in this Court**

   On November 17, 2012, plaintiff Linda Taylor filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Bernard A. Friedman referred this matter to the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claim for disability

insurance benefits and supplemental security income.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 8, 13).

   **B.    Administrative Proceedings**

   Plaintiff filed the instant claims for disability insurance benefits and

supplemental security income benefits on January 29, 2010, alleging disability

beginning January 1, 2008.  (Dkt. 6-3, Pg ID 163-65, 168-74).  Plaintiff's claims

were initially disapproved by the Commissioner on July 19, 2010.  (Dkt. 6-3, Pg

ID 85-86).  Plaintiff requested a hearing and on July 19, 2011, plaintiff appeared

with her attorney before Administrative Law Judge ("ALJ") Joseph L. Brinkley,

who considered the case de novo.  (Dkt. 6-2, Pg ID 53-83).  In a decision dated

August 19, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID

39-49).  Plaintiff requested a review of this decision, and the ALJ's decision

became the final decision of the Commissioner when the Appeals Council on

September 25, 2012, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 25-

27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

   For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

   Plaintiff was born in 1969 and was 42 years old at the time of the

administrative hearing, and 38 years of age on the alleged disability onset date.

(Dkt. 6-2, Pg ID 47).  Plaintiff had past relevant work as a nurse aide and nurse

aide supervisor.  (Dkt. 6-2, Pg ID 47).  The ALJ applied the five-step disability

analysis to plaintiff's claim and found at step one that although plaintiff worked

after the alleged disability onset date, this work activity did not rise to the level of

substantial gainful activity, and thus concluded that plaintiff had not engaged in

substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 44).  At

step two, the ALJ found that plaintiff's sleep apnea, obesity, hypertension, and

chronic back pain were "severe" within the meaning of the second sequential step,

but that plaintiff's complaints of ulcer-related symptoms, abdominal symptoms,

restless legs, rhinitis, fibromyalgia and arthritis were not severe.  (Dkt. 6-2, Pg ID

44-45).  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID

45).  The ALJ determined that plaintiff had the following residual functional

capacity ("RFC"):

> to perform a reduced range of sedentary work.  Sedentary
> work is defined in 20 CFR 404.1567(a).  The claimant
> can occasionally climb stairs, balance, stoop, kneel,
> crouch, and crawl; can never climb ladders/ropes/
> scaffolds; must avoid hazards including dangerous
> machinery and unprotected heights; and is limited to
> unskilled work with no more than superficial contact
> with the public.

(Dkt. 6-2, Pg ID 45-47).

At step four, the ALJ found that plaintiff was unable to perform any of her

past relevant work, which was classified as medium exertional level work, and

heavy as performed, and thus exceeds the RFC outlined above.  (Dkt. 6-2, Pg ID

47).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform

a significant number of jobs available in the national economy.  (Dkt. 6-2, Pg ID

48).  Based on the foregoing, the ALJ concluded that plaintiff had not been under

a disability from January 1, 2008 through the date of the decision.  (*Id.*).

### B.   Plaintiff's Claims of Error

Plaintiff first claims that the ALJ's credibility determination was erroneous.

The ALJ found that plaintiff suffered from severe impairments of "sleep apnea;

obesity; hypertension; chronic back pain."  (Tr. 20).  The ALJ concluded that

although he found:

> the claimant's medically determinable impairments could
> reasonably be expected to cause some of the alleged
> symptoms, and I have accounted for the claimant's
> mental and physical symptoms in the above RFC. I have
> considered the opinions of Dr. Chardoul and Dr. Ray,
> and I do not find either entirely persuasive I have also
> considered the combination of impairments, and the
> claimant's obesity, taking into account Social Security
> Ruling 02-1p. I conclude that overall the longitudinal
> record supports a reduction to the sedentary level with
> the additional restrictions listed above. To the extent the
> claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are
> inconsistent with the above RFC, I do not find them
> entirely credible.

(Tr. 23).  Plaintiff argues that this conclusion by the ALJ that plaintiff's testimony

4

was not entirely credible is clearly in error, as her impairments and testimony support each other.

Plaintiff contends that, in regard to her testimony, she indicated that she can only sit for around 15 minutes due to "numbness in [her] legs." (Tr. 38). She indicated she can only stand for 10 minutes due to "back shooting pains up my spine" and that walking was the same. (Tr. 38). She asserts that she also stated that she has a cane and knee brace that she uses. (Tr. 38). She also indicated that she has difficulty climbing up stairs and has to do it "one step at a time and hold the rail. . . ." (Tr. 39). As for lifting, plaintiff stated that she can only lift around one gallon of milk. (Tr. 39). Plaintiff also testified to difficulty sleeping and fatigue during the day, as well has having to take naps. (Tr. 40). As for household chores, plaintiff stated that when she does them "I can't move the next day. When I, what I do is I would try to get everything done." (Tr. 44). Plaintiff also testified that she needed help in taking care of her child from others and her father. (Tr. 45). She testified that she is in bed 20 days each month. (Tr. 46).

Plaintiff contends that her testimony is backed up in the medical record as well. According to plaintiff, her sleep apnea is evidenced in a record dated 8/17/2009 which indicates that she had an insomnia evaluation which gave the impression of "severe obstructive sleep apnea with an apnea-hypopnea index of 48/hour, and a minimum oxygen saturation of 89%" and "periodic limb movement

disorder." (Tr. 204-206). Also, the record dated 1/11/2010 indicates that plaintiff uses a CPAP machine "every time she tries to go to sleep." (Tr. 210). Plaintiff asserts that her obesity is evidenced in the record under impression where it states "obesity." (Tr. 209). Plaintiff asserts that her back pain is evidenced in a record dated 3/19/2010 where it indicates that she had been having "severe back pain" and was taking part in therapy for it. (Tr. 221). Plaintiff further contends that the record dated 2/2/2010 indicated that "she has right-sided sciatic" and that, again, she is engaging in therapy but is "slowly improving." (Tr. 223). Also the record dated 2/16/2010 indicated that plaintiff "showed increased lumbar lordosis, decreased DTRs on the right lower extremity, weakness in the right bilateral lower extremity," and that when "I worked with her I could barely get her off the table. She was in extreme pain in the lumbosacral spine." (Tr. 225). Plaintiff asserts the record dated 2/2/2010 also indicated that "she had an x-ray of the lumbosacral spine, hips and pelvis and disc space narrowing at C4, C5, C6, and C7 anterior osteophyte formation." (Tr. 227). According to plaintiff, the record dated 11/24/2009 also indicated that "she has ruptured disc in her back. She has paraspinous muscle spasm" as well. (Tr. 235; see also Tr. 281, 283, 285). Thus, plaintiff concludes that her testimony regarding her severe medical impairments is backed up by medical documentation and the ALJ's finding that her testimony was not credible is clearly in error. Plaintiff further asserts that it is clear that her

impairments existed prior to her last date insured as well.

Plaintiff also argues that the ALJ failed to properly evaluate the medical records and therefore formed an inaccurate hypothetical question that did not accurately portray plaintiff's impairments. Plaintiff asserts that the vocational expert testified, in response to the ALJ's second hypothetical question, and the one used by the judge in his decision, that he believed claimant could perform work as a surveillance system monitor, inspector, and assembler. (Tr. 24). However, when the ALJ asked a third hypothetical question, which plaintiff argues is much more representative of her functional abilities, the vocational expert responded that there would be no available jobs. (Tr. 57). Plaintiff states that the following hypothetical question was posed to the vocational expert:

> …assume that we have a hypothetical claimant who started out with the exertional residual functional capacity as noted in hypothetical number two but that in this particular hypothetical she can only sit in 15 to 20-minute intervals and can only stand/walk in combination in 10-minute intervals. She's going to need an assistive device to assist in getting up and down from her chair or whatever she posits in. She has the same type of postural limitations that were noted in the hypothetical number two. She can lift up to seven pounds occasionally and less than seven pounds frequently. This particular hypothetical person would usually be expected to be off tasks for two, three times per day, work an eight-hour workday for as much as two and a half hours each time. That's due to need to nap. And let's add to that a hypothetical person may be, well to, be reduced to simple one or two-step tasks, unskilled tasks…

(Tr. 56-57). In response to this hypothetical question, the vocational expert responded that "there would be no jobs, with these circumstances of this hypothetical would preclude employment." (Tr. 57). Thus, plaintiff argues that this stated hypothetical should have been the one followed by the ALJ and a finding of no jobs available should be warranted and followed.

Plaintiff argues that it is clear from the medical evidence of record and her own testimony that her ability to engage in substantial gainful activity is severely limited as a result of her physical conditions. Plaintiff contends that she would be capable of engaging in substantial gainful activity only by enduring great pain and should, therefore, be found disabled in accordance with the Social Security Rules and Regulations. Plaintiff asserts that the reasons given by the ALJ for discounting plaintiff's testimony are clearly insufficient, as argued above, and go against the rules, regulations and case law, and, plaintiff argues, the great weight of the evidence supports her testimony regarding her conditions and problems and that she should be found disabled in accordance with her testimony.

Based on the above arguments and relevant case law, plaintiff requests that this Court reverse the decision denying benefits and remand this case with an award of benefits, or, in the alternative, remand this case for further proceedings consistent with the above arguments.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ's RFC finding was consistent with the medical evidence of record.  According to the Commissioner, plaintiff does not challenge some of the ALJ's findings, such as his conclusion that plaintiff's descriptions of her limitations were inconsistent with her self-described activities (Tr. 22), or the ALJ's contrasting of plaintiff's testimony concerning alleged mental problems with her failure to seek specialized psychological care.  (Tr. 23).  Thus, the Commissioner asserts that plaintiff's argument mainly boils down to an assertion that the ALJ's residual functional capacity assessment did not adequately account for her impairments.  The Commissioner concedes that plaintiff correctly notes that she testified to greater limitations than contained in the ALJ's RFC assessment (Dkt. 8, p. 10), but contends that the ALJ was not required to credit that testimony.  According to the Commissioner, the question ultimately posed by plaintiff is whether the ALJ's decision was supported by substantial evidence.

Turning to the medical evidence cited by plaintiff, the Commissioner concedes that plaintiff correctly notes that she was diagnosed with sleep apnea in August 2009, but undercuts her own case by admitting that she used a CPAP machine "every time she tries to go to sleep" without offering any evidence (or even an assertion) that CPAP therapy did not significantly improve her apnea. (*See* Dkt. 8).  The Commissioner states that apparently Plaintiff's CPAP titration

9

was finished in January 2010 (Tr. 277), noting that there are references to sleep

apnea in two April 2010 treatment notes (Tr. 284-85), but subsequent notes

do not contain references to apnea or related problems.  (Tr. 276-83).  The

Commissioner further contends that there is no indication her doctor thought

supplemental oxygen or other therapies were appropriate.  Rather, the limited

available evidence suggests that the CPAP titration "seems to work out . . .

hopefully she is getting that at this time."  (Tr. 238).  As for plaintiff's obesity, the

Commissioner states that plaintiff cites to a medical record stating that she was

obese, but the Commissioner notes that the ALJ acknowledged this fact.  (Tr. 23).

The Commissioner contends that it is not clear how plaintiff believes her obesity

to be inconsistent with the ALJ's conclusion that she could do limited sedentary

work.

Turning to plaintiff's statements about her musculoskeletal condition, the

Commissioner asserts that many of the statements she cites are her own self-

reports of pain (e.g., "severe back pain," "[s]he was in extreme pain in the

lumbrosacral spine").  According to the Commissioner, while some signs or

laboratory findings are listed, it should be considered that the ALJ did limit

plaintiff to the least demanding category of work, sedentary work, with additional

limitations.  Furthermore, many of the clinical signs plaintiff lists were not

observed by an acceptable medical source, but instead by a physical therapist,

10

noting, for example, Dr. Chardoul's comment that these findings were obtained by "Ralph" (Tr. 225), presumably physical therapist Ralph McFarland.  According to the Commissioner, Dr. Chardoul's notes contain very little in the way of his own clinical findings concerning plaintiff.  The Commissioner argues that the ALJ implicitly gave more weight to the examination findings of consultative examiner Dr. Ray, and could permissibly do so in light of the fact that Dr. Ray was an acceptable medical source while Mr. McFarland was not.  The Commissioner asserts that Dr. Ray also gave an opinion that he linked to specific results on clinical examination (Tr. 263).  Thus, the Commissioner contends, while the ALJ concluded that plaintiff had limitations, Dr. Ray's conclusion that she could do "her occupational duties without any restrictions" (Tr. 263) and could perform all of the functions listed on the supplemental report form (Tr. 266) provides substantial evidence to support the ALJ's conclusion that plaintiff's musculoskeletal condition was not disabling.

The Commissioner states that plaintiff argues that the ALJ should have followed the third hypothetical question posed to the vocational expert.  But, the Commissioner argues, it is for the ALJ to determine what plaintiff's residual functional capacity is (and thus what type of hypothetical question is necessary), subject to this Court's review for substantial evidence.  *See* 20 C.F.R. § 404.1546(c).

The Commissioner argues that, in her brief, plaintiff also offers boilerplate language about the so-called treating source rule, but fails to link this language at any point to the facts of this case. In fact, plaintiff fails to even mention who she identifies as a treating source who has offered a medical opinion. Thus, the Commissioner argues that plaintiff has waived any argument concerning medical-source statements. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). The Commissioner continues, however, without waiving its waiver argument, that it is not clear that Dr. Chardoul provided anything that would constitute a medical opinion. While the doctor does state that plaintiff "needs to be put on disability" and was "a candidate for disability," the Commissioner contends that these are opinions on a matter reserved to the Commissioner and not subject to the treating-source rule's special protections, *see* 20 C.F.R. § 404.1527(e), and this Court should decline to make plaintiff's argument for her when she has not identified any specific medical opinion in the record that she alleges was erroneously addressed by the ALJ.

In addition, the Commissioner continues, plaintiff has not challenged the ALJ's conclusion that Dr. Chardoul's notes were internally inconsistent, "as sometimes he report[ed] that the claimant is disabled and other times he report[ed] that she is doing well." (Tr. 23). The Commissioner asserts that the ALJ's conclusion is borne out by the record. For instance, Dr. Chardoul wrote that

plaintiff had "severe" pain but noted that in plaintiff's own words, the work of the physical therapists had been "nothing short of miraculous." (Tr. 221). In addition, some of the doctor's statements imply only a short-term inability to work, such as "on sick leave" (Tr. 233) and "off of work for the rest of the week." (Tr. 235; *see also* Tr. 238 ("Stay off of work today and tomorrow" due to acute viral illness.)). According to the Commissioner, these statements do not seem consistent with plaintiff's assertions of disability beginning in January 2008.

The Commissioner asserts that the ALJ also contrasted statements concerning disability made by Dr. Chardoul with the findings of consultative examiner Dr. Ray, who found no evidence of radiculopathy notwithstanding plaintiff's complaints of sciatica, and indeed found unexceptional musculoskeletal findings more generally. (Tr. 23). The ALJ did note the one exception of abnormal big toe strength, but cited Dr. Ray's conclusion that plaintiff did not produce effort in that instance. (Tr. 23). Thus, the Commissioner concludes, not only did the ALJ find that "objective support for finding the claimant totally disabled is lacking" as a reason for giving limited weight to Dr. Chardoul's opinions (Tr. 23), he also pointed to specific clinical findings that were inconsistent with the opinions of disability. Nor did he merely adopt the opinion of Dr. Ray over any opinion of Dr. Chardoul, as he imposed much greater limitations on plaintiff that Dr. Ray's opinion would have warranted . Therefore,

the Commissioner argues that the decision of the ALJ should be affirmed.

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

15

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

16

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in
substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

18

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    **Analysis and Conclusions**

Plaintiff complains that each element of the hypothetical question posed to the vocational expert does not accurately describe plaintiff in all significant, relevant respects and that the vocational expert's testimony at the hearing therefore does not constitute substantial evidence supporting the ALJ's determination that plaintiff is not disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned concludes that plaintiff is attempting to refute the RFC finding via a purported Step Five error.  Plaintiff points to her severe impairments of sleep apnea, obesity, hypertension and chronic back pain, and argues that the ALJ erred in finding that plaintiff's testimony as to the intensity and persistence of her symptoms associated with those impairments was not entirely credible.  As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled."  20 C.F.R. §§ 404.1529(a), 416.929.  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective

20

allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's testimony, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case

21

record" to determine if the claimant's claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned suggests that the ALJ's finding that the objective record evidence did not support plaintiff's claims of disabling limitations is supported by substantial evidence.  Here, as discussed above, the ALJ considered plaintiff's allegations in light of the other evidence in the record and sufficiently explained how plaintiff's allegations were inconsistent with the record evidence.  For example, the ALJ recognized that the treatment notes by Dr. Chardoul, M.D., revealed plaintiff's complaints regarding aching joints, sciatic-type pain, hip and back pain following a fall from a van lift in 2005, chest pain, anxiety, and sleeping problems, and that Dr. Chardoul prescribed medication, physical therapy and obtained sleep testing and referral for evaluation of an abdominal complaint.  (Tr. 220-60, 276-85).  Plaintiff correctly notes that she was diagnosed with sleep apnea in August 2009.  But not every diagnosable impairment is necessarily disabling. *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013) (citing *Higgs*

22

*v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an

impairment] . . . says nothing about the severity of the condition.").  Plaintiff was

provided and used a CPAP machine, and the record does not reveal that the CPAP

did not improve her apnea.  Rather, as the Commissioner points out, plaintiff's

CPAP titration was finished in January 2010, and while there are references to

sleep apnea in two April 2010 treatment notes (Tr. 284-84), subsequent notes do

not contain references to apnea or related problems.  (Tr. 276-83).

As for plaintiff's complaints of musculoskeletal pain, the undersigned notes

that Dr. Chardoul's treatment notes consist primarily of plaintiff's periodic

subjective reports of severe back, hip and/or joint pain, and the record is basically

devoid of any objective testing to confirm plaintiff's subjective complaints, such

as x-rays, MRIs or ultrasound testing.  The ALJ fully discussed the record

evidence, including Dr. Chardoul's treatment notes and findings and found those

notes "difficult to decipher, as sometimes her reports that claimant is disabled and

other times he reports that she is doing well," and noting that "objective support

for finding the claimant totally disabled is lacking."  (Tr. 22-23).  Indeed, the

objective testing in the record consists of an August 2009 polysomnography for

sleep apnea (Tr. 204-12), a September 2009 laboratory report of blood work (Tr.

252-57), and a February 2010 ultrasound revealing a normal gallbladder/liver

ultrasound.  (Tr. 249).  Dr. Chardoul's February 2, 2010 progress note also refers

23

to an x-ray of plaintiff's lumbosacral spine, hips and pelvis showing "disc space narrowing at C4, C5, C6, and C7 anterior osteophyte formation" (Tr. 227), but there is no record of this x-ray in the record. There is also a February 2010 spinal evaluation by a physical therapist, noting plaintiff complained of lower back and right lower extremity, neck and bilateral shoulder girdle pain, starting two to three months ago, that worsened with bending, standing, walking and morning stiffness, and improved with sitting, heat and medication. (Tr. 250-51). That evaluation also noted that plaintiff is independent with activities of daily living, but complained of difficulty with housecleaning, laundry, driving and grocery shopping, and evaluated plaintiff with significant tightness at bilateral lower extremity muscle groups and weakness at bilateral lower extremity and at core trunk muscles, poor endurance, decreased range of motion of the lumbar spine, and difficulty standing or walking for short periods of time, and with an "[e]xcellent" rehabilitation potential. (*Id.*). However, the undersigned notes that a physical therapist is not an acceptable medical source who can provide evidence to establish an impairment, and thus the ALJ was not required to give this evaluation controlling weight. *See Perschka v. Comm'r of Soc. Sec.*, 411 Fed. Appx. 781, 787 (6th Cir. 2010) (citing 20 C.F.R. § 404.1513(a)(1)-(5) as not including physical therapists in the list of acceptable medical sources); *Walters*, 127 F.3d at 530-31 (the ALJ is not required to give the physical therapist's

24

findings controlling weight). Moreover, the report is not necessarily inconsistent with the ALJ's findings regarding plaintiff's residual functional capacity for a limited range of sedentary level work.

The ALJ also properly noted that the examination findings of the consultative examiner Dr. Asit K. Ray, who examined plaintiff and found virtually no functional restrictions. (Tr. 23, citing Tr. 261-70). Dr. Ray noted plaintiff's complaints of lower back pain and sciatica pain in the buttock with radiation to the legs, but "did not find any evidence of lumbo sacral radiculopathy on either side" and "no neurological deficits noted except weakness of the extensor hallicis longus, but she did not give any force during the strength test." (Tr. 261-70). Dr. Ray observed that plaintiff ambulated slowly but normally, could walk on her tiptoe and heel, squat fully and stand up independently, showed no difficulty getting on and off the examination table, and had essentially normal muscle strength and ranges of motion, although she complained of tenderness on palpation of her lumbar spine and over the gluteal muscles. (*Id.*). Dr. Ray concluded that plaintiff "should be able to perform her usual and customary activities including her occupational duties without any restriction." (*Id.*). The ALJ, however, did not agree with Dr. Ray's conclusion of no restrictions, given the evidence of back problems and obesity, and thus found that plaintiff had the residual functional capacity for a reduced range of sedentary level work, the most

restrictive category of work defined for Social Security purposes.  (Tr. 23).

 In contrast to plaintiff's subjective complaints of disabling pain, the ALJ also properly noted the "wide range of activities" in which plaintiff engages, including helping her two children prepare for school, going to school, performing chores, and preparing simple meals, as well has her denial of problems with personal care tasks and report that she drives, shops, pays bills, attends church, and goes outside daily.  (Tr. 22, citing Tr. 127-36, 141-47).  Plaintiff does not contest the ALJ's findings regarding her daily activities, and the undersigned notes that an ALJ can consider daily activities in assessing credibility.  20 C.F.R. § 404.1529(c)(3)(I); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

 Further, the undersigned notes that the ALJ's finding that plaintiff was limited to a restricted range of sedentary level work is not inconsequential.  Under the Social Security regulations, "'sedentary work' represents a significantly

26

2:12-cv-15099-BAF-MJH   Doc # 14   Filed 02/10/14   Pg 27 of 31   Pg ID 391

restricted range of work.  Individuals who are limited to no more than sedentary

work by their medical impairments have *very serious functional limitations*."  SSR

96-9p, 1996 WL 374185, at *3 (1996) (emphasis added).  Further, RFC is the

most, not the least, a claimant can do despite her impairments.  20 C.F.R.

§§ 404.1545(a), 416.945(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425,

429 (6th Cir. 2007).  Accordingly, the ALJ found that plaintiff had some serious

functional limitations but was not completely disabled, and this finding is

supported by substantial evidence.[1]

Plaintiff's claim that the ALJ's RFC determination is in error because that

determination does not include plaintiff's subjective testimony is unavailing, as

"an ALJ is not required to accept a claimant's subjective complaints and may

---

[1]Although plaintiff's motion contains a discussion of the "treating physician rule," she
does not identify any treating physician or treating physician's opinion that the ALJ purportedly
failed to properly address.  (Dkt. 8, pp. 12-15).  Thus, this argument should be deemed waived.
*See McPherson v. Kelsey*, 125 F.3d at 989, 995, 96 (6th Cir. 1997) ("[I]ssues adverted to in a
perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed
waived.  it is not sufficient for a party to mention a possible argument in the most skeletal way,
leaving the court to . . . put flesh on its bones.").  In any event, although Dr. Chardoul's progress
notes contain statements that plaintiff "needs to be put on disability" and is "totally unable to
work at this time," (Tr. 282, 284-85), the regulations specifically exclude from consideration
opinions on certain issues, such as conclusory statements that a claimant is disabled or unable to
work.  *See* 20 C.F.R. § 404.1527(d); *see also Dunlap v. Comm'r of Soc. Sec.*, 509 Fed. Appx.
472, 476 (6th Cir. 2012) (holding doctor's conclusion in single-sentence note that "[i]n my
medical opinion, [claimant] has severe low back pain and due to his pain is unable to work" did
not constitute medical opinion and was properly reserved to the Commissioner).  Thus, the ALJ
could properly disregard Dr. Chardoul's statements on this issue.  Further, as explained above,
the ALJ properly noted that Dr. Chardoul's notes are internally inconsistent and not supported by
objective testing, and he contrasted those notes with the opinion of Dr. Ray, who found no
evidence of radiculopathy and unexceptional musculoskeletal findings.  (Tr. 23).

27

properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Plaintiff appears to be arguing that merely because plaintiff has severe impairments, she must be precluded from all work. However, that is inaccurate. The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, while the medical evidence indicates that plaintiff does have severe impairments as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of her limitations. Indeed, there is evidence to support the ALJ's finding that plaintiff was able to perform a limited

range of sedentary work, and thus there is substantial evidence to support the

ALJ's finding that plaintiff was not fully credible, and the plaintiff's claims of

error should be denied.

Because the ALJ reached his decision using correct legal standards and

because those findings were supported by substantial evidence, the Court must

affirm it, even if reasonable minds could disagree on whether the individual was

disabled or substantial evidence could also support a contrary result.  *Wright v.

Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of

Soc. Sec.*, 402 F.3d 591, 595 (6tyh Cir. 2005) ("If substantial evidence supports

the Commissioner's decision, this Court will defer to that finding even if there is

substantial evidence in the record that would have supported an opposite

conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 10, 2014               s/Michael Hluchaniuk
                                      Michael Hluchaniuk
                                      United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on February 10, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, William L. Woodard, Jason Scoggins and the Commissioner of Social Security.

                                      s/Tammy Hallwood
                                      Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov